of the head, from the Field nail, so called, and other tapering and corrugated nails which were in common use. So far as the defendants' nail differs in form from nails which were old, it is merely an attempt to improve upon the form of the old corrugated, tapering-cut shoe-nail. It is not like the complainants', an improvement in the screw made by cutting off lengths of cable wire, or corrugated wire, and forming a point on one end of each piece by cutting away the metal upon opposite sides so as to form a thin wedge-shaped end with concaved sides. The two improvements relate respectively to different points of departure from entirely distinct manufactures. One vital distinguishing difference between the complainants' screw-peg and the Whidden nail is, that the complainants' screw-peg has a body continuing of the same size without tapering from the driving end to the commencement of the entering and clinching point, and this is a vital and important element in this invention, while the defendants' nail is cut tapering from the driving to the entering end of the nail without any such wedge-shaped flattened end or point, separate from the body of the nail or peg, as distinguishes the complainants' invention. Other differences are clearly pointed out in the testimony of Mr. Waters and Mr. Hibbard, the experts on the part of the defendants, who have given a very clear and accurate history of the state of the art. The differences, however, which I have pointed out are sufficient to prove that the defendants' nail is not an infringement upon the complainants' screw-peg. I find myself unable to give any construction of the complainants' patent for a manufactured article which would cover the defendants' manufacture without at the same time embracing what was older than complainants' invention, and thus invalidating their patent. The conclusion to which I have arrived is that the complainants have a good and valid patent, but that the defendants have not infringed.

Decree in favor of defendants to be drawn up and submitted to the court.

## Case No. 4,536.

In re ESTES et al.

[See 3 Fed. 134.]

## Case No. 4,537.

ESTHER et al. v. BUCKNER.

[4 Cranch, C. C. 253.] [1]

Circuit Court, District of Columbia. Nov. Term, 1832.

Petition for freedom [by Esther, a negro, and her two children]. Evidence was offered to the following effect: The petitioners were brought in from Virginia on the 6th of January, 1828. The defendant [Bernard H. Buckner], then owner of the petitioners, came to Washington on the 3d of November, 1826, with intent to remove and settle there, and had some of his household furniture in one of the houses called the seven buildings, in that city; and some of his family, namely, two daughters, and some of his servants resided there. His wife and some of his children and some of his furniture did not arrive until about the 7th of January, 1827. The defendant had, (on the 3d of November, 1826, in order to be able to hire his slaves in this District without incurring the fine of $20 each, imposed upon slaves of non-residents hired out in the city, by a by-law of the corporation of Washington,) given a list of his slaves, agreeably to that by-law: in which he calls himself Ariss Buckner, residing in the first ward; and, on the 7th of January, 1828, he gave a like list of other slaves brought in within twenty days preceding that date. This last list included the petitioner, Esther, and her two children.

Upon trial of the cause, on the general issue, R. S. Coxe, for the defendant, prayed the court to instruct the jury, that if they should believe, from the evidence, that Mr. Buckner, being a citizen and resident of Virginia, in the month of November, 1826, commenced, bona fide, moving his furniture and family, and continued such act of removal, bona fide, at intervals during the month of December, and up to January 7, 1827, then the petitioners, having been intro-

[1] [Reported by Hon. William Cranch, Chief Judge.]